IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| OLD REPUBLIC INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 03 C 5238 |
| v. | ) | |
| | ) | |
| NESS, MOTLEY, LOADHOLT, RICHARDSON & POOLE, P.A.; MOTLEY RICE LLC; MRRM, P.A.; RICHARDSON, PATRICK, WESTBROOK & BRICKMAN, L.L.C.; H. BLAIR HAHN; MICHAEL J. BRICKMAN; TERRY E. RICHARDSON, JR.; INTERCLAIM HOLDINGS, LTD.; INTERCLAIM RECOVERY, LTD.; and TWIN CITY FIRE INSURANCE COMPANY, | ) ) ) ) ) ) ) ) ) ) | Judge Manning<br><br>Magistrate Judge Mason |
| Defendants. | ) | |

**NESS MOTLEY's MOTION FOR JUDGMENT AS A MATTER OF LAW ON THE CONFLICT OF INTEREST EXCLUSION**

The policy's conflict of interest exclusion provides that the "policy does not apply to" "claims arising out of the insured's rendering or failing to render professional services to two (2) or more parties of divergent, varying, or opposed interest, thereby creating an actual conflict of interest." (LR. 1).[1] To prevail on this exclusion, Old Republic must demonstrate "that it is free from doubt that insured's claim falls within an exclusion from Coverage." Perzy v. Intercargo Corp., 827 F. Supp. 1365, 1367 (N.D. Ill. 1993). Where there are ambiguities, "the court must construe the policy in favor of coverage." I/N Kote v. Hartford Steam Boiler Inspection and Ins.,

---

[1] Because Ness Motley's Statement of Facts is only six paragraphs long, and because it has previously submitted a statement of facts, the statement of facts as it relates to this motion is included as an attachment to this document.

1

115 F.3d 1312, 1316 (7th Cir. 1997). Accord Zack Co. v. Liberty Mut. Ins. Co., 1995 WL 340955 at *3 (N.D.Ill. June 2, 1995)(Manning, J.)("if the language is ambiguous, a court will construe such ambiguity in favor of the insured since the insurer drafted the policy."). Old Republic cannot meet this stringent burden of proof, because the underlying judgment, if anything, conclusively demonstrates the opposite.

## Argument

Interclaim's position at trial was that there was no conflict between Interclaim and the class, and that Blair Hahn's contrary claim was "manufactured," a "sham," and "phony." (LR2) Its position was that Blair Down's settlement overture was harmful to *both* the class and Interclaim, that it thus never should have been pursued, and that it was pursued solely for to benefit Ness Motley. The settlement offer to the class was approximately $5 million against the class's claims for roughly $200 million, with at least $60 million worth of Blair Down's collectible assets having been frozen and Down having pled guilty to criminal charges on this score. (See LR3).

Interclaim's lawyer in his opening statement stated,

"in fact, there is no conflict, none, between Interclaim and the victims for at least three reasons. This supposed conflict was a phony conflict, not a real one. ... The deal that [Downs] was offering to the class was an illusion. It didn't benefit the class. It was a sellout. Down wanted Interclaim out because it was Interclaim that found the assets, froze the assets, and was pursuing them. With Interclaim out of the picture and not able to help the victims, not able to do any of these [sic] he was confident he could get a good settlement for himself and skate away without paying the victims very much at all. So the deal he was offering hurt Interclaim. It hurt the 29. It hurt the victims. That's not a conflict." (LR4).

Professor Rotunda, Interclaim's expert, testified consistent with this opinion that the "interests [between Interclaim and the class] were congruent." (LR5). This was the centerpiece

of Interclaim's presentation at trial.

The trial resulted in a $36,000,000 verdict in favor of Interclaim. (LR6). When it comes to every other facet of this case, Old Republic is more than willing to castigate Hahn and Brickman's conduct. But when it comes to whether they (really Hahn) fabricated a conflict, they take his side and claim that there really was one, and that they have a right to prove it. If Hahn was presented with a legitimate conflict, the jury's verdict would have been the opposite of what it was. And if there had been a real conflict, Ness Motley would have been required to withdraw from the representation of both clients, because the conflict was bona fide, and a substitute lawyer would have come in to pursue the settlement discussions because they were legitimate. The verdict roundly rejects this.

While Ness Motley would like to re-litigate many facets of the case and adduce evidence that was not presented, it cannot do so. Otherwise, the entire Interclaim case would have to be retried, but with the difficulty being that the conclusion reached may not even be consistent with the initial verdict. This is sheer speculation, which is not permitted, because Old Republic is required to conclusively demonstrate the applicability of the conflict of interest exclusion.

Reduced to its essentials, Old Republic's argument is that that which Interclaim's own lawyers, with their plenary knowledge of their case, were flatly wrong about what they considered the cynosure of their case–namely the "phony," "manufactured," "sham" nature of the conflict–because there *really was a real* conflict. Leaving aside whether it is possible to conceive how this was so, it is *impossible,* in light of the verdict, to **conclusively <u>refute</u>** the possibility that the jury found the conflict to be a sham. Phrased somewhat differently, it is *impossible,* in light of the verdict, to conclusively *refute* the *possibility* that the jury *agreed with*

3

*the lawyers whose client they awarded $36 million.* Because of that impossibility, Old Republic has not and cannot meet its burden at trial on this exclusion, which thus must be rejected as a matter of law given the stringent standards of proof required of one seeking to rely upon an exclusion.

Acceptance of Old Republic's position would require the Interclaim case to be retried, <u>en toto</u>, while its lawyers attempted to prove to a new jury, conclusively, that the conflict was not manufactured. In light of the underlying verdict and testimony, that would be an exercise in futility.

Old Republic's opposition brief is telling. First, it argues that the claim is broader than the verdict, and that the claim is the notice received from Interclaim about the suit. This is silly, because the issue now is whether the *verdict* is a covered claim or not. Second, the jury verdict did conclusively decide the conflict issue.

Moreover, as we have said, even if there was some dispute about it, because Old Republic plainly will have failed its burden. Indeed, the notion that a finder of fact in this case could "conclusively" say that the underlying jury, in awarding punitive damages, *rejected* the "sham" conflict thesis, "forcefully" presented by Professor Rotunda, is hopelessly at odds with Judge Pallmeyer's view of things:

> Finally, the court sees no merit in Ness Motley's assertion that Interclaim presented insufficient evidence of willful or wanton conduct by Ness Motley to support an award of punitive damages. (Def. Mem., at 31-34.) Ness Motley notes that it sought "not one, but two ethics opinions" and claims that it merely followed the experts' advice in withdrawing as Interclaim's counsel. ( *Id.* at 32-33.) According to the firm, this behavior "strongly militates against any evidence of willful or reckless conduct." ( *Id.* at 32.) As noted earlier, however, Interclaim presented evidence that Ness Motley did not provide the experts with all the relevant facts when it obtained their opinions. (Pl. Mem., at 10-13; Tr. 1561-61,

4

> 1592-93, 1996-2003; PX 169.) *Moreover, Interclaim's own nationally-recognized ethics expert, Professor Ronald Rotunda, testified forcefully that full consideration of the facts leads to the conclusion that Ness Motley's conduct was plainly improper. (Tr. 461-527; PX 245.) "[B]asically [Down's] lawyer would like [Ness Motley] to sell down the river, to sell out some of its clients in exchange for-for money. And that's not a conflict. That's an outrage." (Tr. 474.)* Thus, there was sufficient evidence from which the jury could reasonably conclude that Ness Motley's conduct was willful and wanton, and the firm's objection on this basis is overruled. *Parham v. Chicago Board of Educ.*, 79 F.3d 1150 (7th Cir.1996) ("[g]reat deference traditionally has been accorded to a jury's verdict, and we shall not set aside the decision of a jury if a reasonable basis exists in the record to support that verdict").

Interclaim Holdings Limited v. Ness Motley, 2004 WL 725287 at *6 (N.D.Ill. April 1, 2004)(Emphasis supplied). While it might be argued that Judge Pallmeyer's assessment that the jury was moved by Professor Rotunda's "forceful" presentation was wrong, Old Republic most assuredly cannot demonstrate that "conclusively." See 12th Street Gym, Inc. v. General Star Indem., 980 F.Supp. 796, 802 (E.D. Pa. 1997)(finding in favor of coverage where extrinsic evidence insufficient to resolve exclusion's ambiguities).

Third, there is nothing prejudicial to Old Republic about any of this. The law requires carriers to cover claims unless they can conclusively demonstrate non-coverage. Fourth, the "overwhelming" evidence of the actual conflict is the defense case at trial, which didn't fare too well. Hence the $36 adverse verdict.

While in certain cases, courts may allow additional evidence, no authority of which we are aware allows additional evidence on matters that were actually *tried*.

Accordingly, Ness Motley is entitled to judgment as a matter of law on Count VII.

Respectfully submitted,

_____
STEPHEN SCALLAN

_____
ANDREW STAES

STAES & SCALLAN, P.C.
111 W. Washington
Suite 1310
Chicago, IL 60602
(312) 201-8969

1. The Old Republic policy's conflict of interest exclusion provides that the "policy does not apply to" "claims arising out of the insured's rendering or failing to render professional services to two (2) or more parties of divergent, varying, or opposed interest, thereby creating an actual conflict of interest.

2. Interclaim's position at trial was that there was no conflict between Interclaim and the class, and that Blair Hahn's contrary claim was "manufactured," a "sham," and "phony." Exhibit 1 at 39-41.

3. Interclaim's position at trial was that Blair Down's settlement overture was harmful to *both* the class and Interclaim, that it thus never should have been pursued, and that it was pursued solely for to benefit Ness Motley. The settlement offer to the class was approximately $5 million against the class's claims for roughly $200 million, with at least $60 million worth of Blair Down's collectible assets having been frozen and Down having pled guilty to criminal charges on this score. (See Exhibit 1, at 226-27, 242, 355-56, 361-63).

4. Interclaim's lawyer in his opening statement stated,

"in fact, there is no conflict, none, between Interclaim and the victims for at least three reasons. This supposed conflict was a phony conflict, not a real one. ... The deal that [Downs] was offering to the class was an illusion. It didn't benefit the class. It was a sellout. Down wanted Interclaim out because it was Interclaim that found the assets, froze the assets, and was pursuing them. With Interclaim out of the picture and not able to help the victims, not able to do any of these [sic] he was confident he could get a good settlement for himself and skate away without paying the victims very much at all. So the deal he was offering hurt Interclaim. It hurt the 29. It hurt the victims. That's not a conflict." (Interclaim Trial,

5. Professor Rotunda, Interclaim's legal ethics expert, testified consistent with this opinion that the "interests [between Interclaim and the class] were congruent." (Exhibit 1 hereto, Interclaim Trial Tr., Rotunda trial testimony at Tr. 515).

6. The trial resulted in a $36,000,000 verdict in favor of Interclaim.

Respectfully submitted,

*/s/ Stephen Scallan*
STEPHEN SCALLAN

*/s/ Andrew Staes*
ANDREW STAES

STAES & SCALLAN, P.C.
111 W. Washington
Suite 1310
Chicago, IL 60602
(312) 201-8969

## CERTIFICATE OF SERVICE

I, Stephen Scallan, hereby certify that I have caused Ness Motley's Motion For Judgment as a Matter Of Law on the Conflict of Interest Exclusion to be served on the parties in the Service List below electronically and by U.S. Mail on December 21, 2006.

*[signature]*
STEPHEN SCALLAN

### SERVICE LIST

Chris Nemeth
McDermott, Will & Emery
227 W. Monroe Street
Suite #3100
Chicago, Illinois 60606

Mr. Gregory Scandaglia
Scandaglia & Ryan
55 E. Monroe Street
Suite #3930
Chicago, Illinois 60603