IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| OLD REPUBLIC INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 03 C 5238 |
| | ) | |
| NESS, MOTLEY, LOADHOLT, | ) | Judge Blanche M. Manning |
| RICHARDSON & POOLE, P.A.; | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM AND ORDER

The parties have filed motions in limine in anticipation of the upcoming trial. The court addresses below each motion in turn.

I.  Old Republic's Motions

Motion in Limine #1 is addressed in a separate minute order.

A.  *Motion in Limine #2 (Evidence of Second Policy)*

Old Republic moves the court to bar any evidence or argument relating to the insurance policy known in this litigation as the "Second Policy." This action originally involved two "claims made and reported" Excess Professional Liability policies that Old Republic issued to Ness Motley covering two consecutive twelve-month periods. There is no dispute that the Underlying Claim in this case arose during the First Policy period. In its ruling on the motion for summary judgment, the court rejected the argument that the Second Policy "extended" the reporting period for the First Policy period.

Ness Motley contends that evidence of the Second Policy should be permitted as it is relevant to the issue of whether Harold Weeks is Old Republic's agent as well as whether Old Republic sold Ness Motley "illusory" insurance. The court agrees that to the extent that the Second Policy is relevant to these issues, the Second Policy is admissible.

Nor does the court find that the probative value of the Second Policy is substantially outweighed by the danger of unfair prejudice, as argued in the alternative by Old Republic. Old Republic, through the submission of its own evidence and through cross-examination and jury instructions, can ensure that the jury understands that the court has held that the First Policy is not extended by the Second Policy and that under Illinois law, notice made during the Second Policy does not suffice as notice during the First Policy period.

Old Republic's motion in limine #2 is denied.

B.    *Motion in Limine #3 (Professor Finkel's "cooperation clause" opinion)*

Old Republic moves to bar the defendants' expert, Gerald Finkel, from testifying that the defendants did not violate the "cooperation clause" of Old Republic's policy, arguing that Old Republic's dismissal of the "failure to settle" count (Count IX) renders the issue of the cooperation clause irrelevant. Moreover, Old Republic argues that such testimony may improperly confuse the jury on Old Republic's defense that notice was not timely provided under the First Policy.

Ness Motley agrees that the "cooperation clause" is no longer at issue and the Richardson Patrick defendants state that they will not attempt to elicit testimony from Professor Finkel regarding the cooperation clause (as well as the bad faith and intentional act exclusions, see motions in limine #5 and #6) provided that Old Republic does not seek to elicit testimony on these topics from its expert, Mr. Collins. With this is mind, the court grants Old Republic's motion in limine #2. Obviously, Mr. Collins will be prohibited from opining on the cooperation clause given that it is no longer relevant.

C.    *Motion in Limine #4 (Professor Finkel's "conflict of interest" exclusion opinion)*

Old Republic moves to bar Professor Finkel from testifying that the "conflict of interest" exclusion does not apply to bar coverage in this case because such testimony constitutes impermissible legal opinions.

FRE 702 allows expert testimony as follows: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of opinion or otherwise." "An expert's opinion is helpful only to the extent the expert draws on some special skill, knowledge, or experience to formulate that opinion; the opinion must be an expert opinion (that is, an opinion informed by the witness' expertise) rather than simply an opinion broached by a purported expert." *Ancho v. Pentek Corp.*, 157 F.3d 512, 518 (7th Cir. 1998).

However, "expert testimony as to legal conclusions that will determine the outcome of the case is inadmissible." *Good Shepherd Manor Foundation, Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003). "Legal conclusions as to ultimate issues generally do not assist the trier of fact because they simply tell the trier of fact what result to reach." *Klaczak v. Consol. Med. Transp.*, 96 C 6502, 2005 WL 1564891, at *8 (N.D. Ill. May 26, 2005)("Generally, the use of expert testimony is not permitted if it will usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it." *Id.*

Here, Old Republic points to Professor Finkel's report (Exh. D to Old Republic's motions in limine, pp. 11-13) and contends that it improperly invades the province of the court and the jury. This court agrees. Professor Finkel's written report on this issue simply sets out case citations and quotations as well as relevant portions of the insurance policies at issue. He then concludes, after the purportedly relevant citations, that "it is impossible to determine if the jury [in the Underlying Action] premised liability solely on a cause excluded by the policies. Consequently, Old Republic cannot assert the exclusion as a bar to coverage. *See United States*

*Fid. & Guaranty Co. v. State Farm Mut. Auto Ins. Co.*, 504 N.E.2d 123 (Ill. App Ct. 1987)."

This portion of Professor Finkel's report is more like a litigant's submission to the court, not an expert report. Not only does Professor Finkel's written report on the issue set forth what he believes the relevant law to be, which is the court's role when it instructs the jury, but he sets forth what the legal conclusion should be based on the law and facts that he describes, which is the jury's role. The court finds that, based on these reasons, Professor Finkel's written report on this issue is inadmissible. *Klaczak*, No. 96 C 6502, 2005 WL 1564891, at *9 (excluding most of expert's report in which the expert's "report recites what he views as the applicable law and reaches the conclusion that each of the Defendants has violated a federal criminal statute and various federal regulations").

Ness Motley argues that Old Republic's expert, Mr. Collins, should be prohibited from offering similar legal conclusions. Obviously, to the extent that Old Republic seeks to introduce into evidence such testimony, it will be excluded for the reasons stated herein.

However, the court sees no reason that the parties' expert cannot offer their opinions, based on their specialized knowledge, skill, experience, and training as to whether an actual conflict of interest existed in the Underlying Action. Simply because the plaintiff argued in the Underlying Action that no conflict existed does not mean that one did not exist or more precisely, that Old Republic cannot attempt to show that one existed. Old Republic's motion in limine #4 is granted as stated herein.

        D.      *Motion in Limine #5 (Professor Finkel's opinion on "fraudulent conduct" exclusion)*

Old Republic also seeks to bar Professor Finkel's opinion that "Old Republic cannot assert [the fraudulent conduct exclusion] as a bar to coverage." Professor Finkel's report sets forth the exclusion and notes that the jury was instructed that it could impose punitive damages "where the Plaintiff proves by clear and convincing evidence the defendant's actions were willful, wanton, malicious, or in reckless disregard of the plaintiff's rights. . . ." Professor Finkel further notes that the jury awarded punitive damages in the sum of $27.7 million but the verdict form did not set forth the basis for the verdict. Professor Finkel then states that "[w]hile the jury arguably could have found Ness Motley's conduct was dishonest, fraudulent, criminal, or malicious, no evidence exists indicating that it did." Thus, he concludes that Old Republic cannot assert this exclusion as a bar to coverage.

Ness Motley asserts that it is adopting the Richardson Patrick defendants' response to this motion. As an initial matter, the Richardson Patrick have been dismissed with prejudice from the case. In any event, before they were dismissed, the court did not receive a response by the Richardson Patrick defendants to motion in limine #5. The only thing that the Richardson Patrick defendants indicated as to motion in limine #5 is that they would not attempt to elicit testimony concerning the "fraudulent conduct/intentional act" exclusion provided that Old Republic did not attempt to elicit testimony from its own expert, Mr. Collins, regarding the same.

Nevertheless, the court finds that Professor Finkel's testimony is not based on his role as an expert witness (i.e., any special skill, knowledge or experience), but on facts in the record. Therefore, to the extent this issue is still at issue, this opinion testimony is inadmissible. *Ancho v. Pentek Corp.*, 157 F.3d at 518 ("An expert's opinion is helpful only to the extent the expert

draws on some special skill, knowledge, or experience to formulate that opinion; the opinion must be an expert opinion (that is, an opinion informed by the witness' expertise) rather than simply an opinion broached by a purported expert."). Old Republic's motion in limine #5 is granted.

E.   *Motion in Limine #6 (Professor Finkel's "bad faith" opinion)*

Old Republic also asks this court to bar Professor Finkel from testifying that Old Republic acted in bad faith in denying coverage for the Underlying Claim. Old Republic specifically points to Professor Finkel's testimony that certain coverage positions taken by Old Republic are "indicia of bad faith" and that they constitute improper claims practice under 215 ILCS 5/154.6. However, because the court dismissed the "bad faith" counterclaim, the proposed testimony is irrelevant and therefore inadmissible. Old Republic's motion in limine #6 is granted.

F.   *Motion in Limine #7 (Evidence or argument contrary to court's prior rulings on the basis of the punitive damages award)*

Old Republic seeks to exclude evidence or argument that Ness Motley's liability was based on anything other than direct liability. Ness Motley offers no argument in response other than to say it is "unclear" what Old Republic seeks to bar. Given this court's ruling in its summary judgment order that, as a matter of law, the punitive damage award was based on Ness Motley's direct versus vicarious liability, Old Republic's motion in limine #7 is granted.

G.   *Motion in Limine #8 (Evidence of "expired binder")*

Old Republic seeks to bar any evidence or argument that the defendants were defrauded or prejudiced by Old Republic's issuance of a policy binder that incorrectly states that the binder period was 8/15/2000 to 10/15/2000. However, the court's rejection of Ness Motley's argument in the motion for summary judgment that Old Republic intentionally issued a binder that expired prior to sending out the actual policy in the hopes that Ness Motley would fail to properly report the claim was based on a lack of evidence as it related to the affirmative defense of unclean hands. The fraud counterclaim, to which Ness Motley contends the binder is relevant, was not ruled on and will be resolved at trial. Old Republic's motion in limine #8 is denied.

H.   *Motion in Limine #9 (Evidence of "delayed" coverage determination)*

Old Republic moves to bar evidence or argument that Old Republic "delayed" in providing a coverage determination to the defendants. The defendants had previously argued that in connection with their affirmative defenses and counterclaim (that the coverage was illusory) that part of Old Republic's "scheme to defraud" was to delay informing the defendants of its adverse coverage determination. In granting summary judgment to Old Republic on certain of Ness Motley's affirmative defenses, the court rejected Ness Motley's argument that Old Republic waited too long to issue a reservation of rights letter. However, this rejection was based only on

the arguments set forth as to the affirmative defenses. To the extent that Ness Motley seeks to introduce such evidence at trial with respect to its counterclaim, it will be up to Old Republic to impeach or rebut such evidence if it so chooses. Old Republic's motion in limine #9 is denied.

      I.      *Motion in Limine #10 (Evidence that Old Republic never paid a punitive damages claim)*

In Ness Motley's counterclaim, it alleges that the fact that Old Republic has never paid out an insurance claim for punitive damages is evidence of Old Republic's fraudulent conduct toward Ness Motley. Old Republic seeks to exclude any such evidence on three grounds: (1) whether or not Old Republic has paid out on other insurance claims is irrelevant to a) whether it was paid in the instant case and b) whether Old Republic fraudulently induced Ness Motley to purchase "illusory coverage"; (2) such evidence is inadmissible as other bad acts under FRE 404(b) and; (3) even if relevant, it is inadmissible under FRE 403 because any probative value is substantially outweighed by the risk of unfair prejudice because there is no evidence that any other insured has made a claim for punitive damages and such an inquiry would require a trial within a trial.

As an initial matter, Ness Motley states in its response to this motion that the court has already "concluded that Ness Motley purchased punitive damage coverage." However, while the court may have made an observation to that effect based on statements by the parties, it did not necessarily make any such legal conclusion–the only conclusion that the court made on those two motions to dismiss referenced by Ness Motley was that Ness Motley had adequately *alleged* a scheme to defraud.

To the extent that Old Republic argues that such evidence is irrelevant, the court agrees with Ness Motley that it is relevant to Ness Motley's counterclaim of fraud. As to "other acts" under Rule 404(b), such evidence is admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. FRE 404(b). Thus, to the extent that Ness Motley offers it for those purposes, it would be admissible under Rule 404(b).

However, as to Old Republic's contention that evidence as to whether it has paid out punitive damages claims on other policies may be inadmissible under Rule 403, the court notes that there is a possibility that any probative value is substantially outweighed by the risk of unfair prejudice. *International Surplus Lines Ins. Co. v. Fireman's Fund Ins. Co.*, 998 F.2d 504, 508 (7th Cir. 1993)(finding that district court did not abuse its discretion in excluding evidence at trial under Rule 403 regarding a reinsurer's position on reinstatement in another litigation because it was only "marginally relevant," confusing and misleading to the jury and would require a trial within a trial). However, such a determination is best made in the context of trial. Accordingly, Old Republic's motion in limine #10 is denied pending renewal at trial.

      J.      *Motion in Limine #11 (Evidence of oral notice)*

Old Republic argues that because the policy at issue is a claims-made policy, Illinois requires that notice provisions be strictly followed. Accordingly, Old Republic asserts that because its claims-made policy required written notice, any evidence or argument by Ness Motley that it provided oral notice is inadmissible as irrelevant. Old Republic seeks to avoid

liability under the instant policies for lack of notice–specifically, it asserts that while the claim against Ness Motley was first made in December 2000 (when the complaint in the Underlying Action was filed), Ness Motley did not notify Old Republic of the claim until April 15, 2002, after the period of the First Policy, which had effective dates of August 15, 2000 to August 15, 2001. According to the policies, any claims made against Ness Motley during a policy period had to be reported to Old Republic in writing within 60 days after the end of the relevant policy period.

In its ruling on the motion for summary judgment, this court noted what appeared to be an inherent tension under Illinois law regarding notice of a claim in a claims-made policy. Illinois caselaw is clear that notice provisions in claims-made policies are strictly construed. However, the Illinois Supreme Court has stated that "actual notice" of a lawsuit (rather than formal tender by the insured to the insurer) triggers the insurer's duty to defend. *Compare Executive Risk Indemnity, Inc. v. Chartered Benefit Servs. Inc.*, No. 03 C 3224, 2005 WL 1838433, at *6 (N.D. Ill. July 29, 2005)("the reporting/notice requirement in a claims made policy is 'considered [a] valid condition [] precedent and not just [a] technical requirement.'")(citation omitted)) *with Cincinnati Cos. v. West Am. Ins. Co.,* 701 N.E.2d 499, 505 (Ill. 1998)("the insurer's duty to defend is triggered by actual notice of the underlying suit, regardless of the level of the insured's sophistication").

Old Republic contends that this is just an "apparent" tension. Old Republic argues that, although not specified in the opinion, the policy in *Cincinnati Companies* was likely an occurrence-based policy and not a claims-made policy, as to which the notice rules are more stringent. Indeed, the Illinois Supreme Court has noted that "notice requirements play a different role in claims-made policies than in those occurrence-based policies," and in so doing has expressly stated that its holding relating to notice by a policyholder was only as to occurrence-based and not claims-made policies. *Country Mut. Ins. Co.v. Livorsi Marine, Inc.*, 856 N.E.2d 338, 344 n.1 (Ill. 2006)(notice provision in an occurrence-based policy which required notice "as soon as practicable" is interpreted to mean "within a reasonable time" and holding that prejudice to the insurer is one factor to consider when determining whether policyholder provided reasonable notice).

As noted by another court in this district:

> [A] claims made policy is one in which coverage is conditioned on a claim having been asserted against the insured during the policy period. A "claims made and reported" policy requires that the claim against the insured, and the report of such claim to its carrier, occur within the same policy period as a precondition to coverage. In this regard, " 'it is the making of the claim which is the event and peril being insured and, subject to policy language, regardless of when the occurrence took place."
> 
> . . .
> 
> "[T]he reporting requirement of a claims made policy.. eliminate[s] an insurer's 'tail' exposure by minimizing 'the time between the insured event and the payment.' ' Because the reporting requirement provides insurers greater certitude as to their liability exposure, "an insured [under a claims made policy] pays a

> lesser premium, and receives broader coverage than under an occurrence policy
> because conduct occurring before the policy term is covered." In this regard, the
> reporting/notice requirement in a claims made policy is "considered [a] valid
> condition [ ] precedent and not just [a] technical requirement." "Coverage under a
> claims-made policy occurs when a claim is made and reported during the specified
> policy period." That is because, as courts have repeatedly recognized, "the essence
> of a claims made policy is notice to the carrier within the policy period."
>
> . . .
>
> Given the purpose and function of the reporting requirement in a claims made
> policy, "such reporting requirements are strictly construed."

*Executive Risk Indemnity, Inc.*, 03 C 3224, 2005 WL 1838433, at *6 (internal citations omitted). Thus, while courts have held that allowing delays in reporting past the relevant policy period would alter the basic terms of the contract, this court has not found any decisions in which a court expressly speaks to whether permitting oral notice (as Ness Motley seeks to do here) versus written notice (as required by the Old Republic policies) would change the contract terms. However, at least one Illinois court decision has accepted "actual notice" by other defendants' counsel within the relevant policy period of a claims-made policy. *Employers Reinsurance Corp.v. E. Miller Ins. Agency, Inc.*, 773 N.E.2d 707, 716-17 (Ill. App. Ct. 2002)("regardless of whether there is a tender of the defense by the insured [covered by a claims-made policy], an insurer's actual notice of a potential suit, within a reasonable time, is sufficient to satisfy the insured's duty to give prompt notice"). *See also American Nat. Fire Ins. Co. v. Abrams*, No. 99 C 5807, 2002 WL 243455, at *3 (N.D. Ill. Feb. 19, 2002)(addressing an insured's argument–without expressly stating that such an argument is proper under Illinois law--that the insurer had actual notice of a suit within the proper policy period of a claims-made policy but ultimately rejecting the actual notice argument because the documents the insured relied upon were insufficient to allow the insurer to actually locate and defend the lawsuit on behalf of the insured).

This is obviously a matter best left to Illinois courts to decide. However, in light of the fact that the court must attempt to divine how Illinois courts would rule on this issue, it concludes that despite the fact that the law is clear that claims-made policies require a court to strictly construe notice provisions, allowing oral notice would not inherently alter the terms of the insurance contract between Old Republic and Ness Motley. Ultimately, in a claims-made policy, it is the timing of the notice that is critical (by giving the insurer greater certainty as to its liability exposure in a certain time period). As stated above, the essence of a claims-made policy is notice to the carrier within the policy period, which is satisfied with actual notice. Moreover, in *Cincinnati Companies*, the Illinois Supreme Court demonstrated its desire to elevate substance over form by holding (likely in an occurrence-based policy) that an insured need not formally tender a claim to the insurer in order for the duty to defend to be triggered; rather, actual notice is sufficient. Finally, as noted above, at least one Illinois court has applied the actual notice concept to a claims-made policy.

Accordingly, the court concludes that if Ness Motley can demonstrate that Old Republic

had actual notice, as that term is defined in *Cincinnati Companies*, such actual notice would be sufficient to trigger Old Republic's duties under the policy.

Nor is the court convinced by Old Republic's argument that the distinction between a duty to defend (which was at issue in *Cincinnati Companies*) and a duty to indemnify had any bearing on the Illinois Supreme Court's decision that actual notice verus formal tender triggers an insurer's duty to defend. According to Old Republic, the Illinois Supreme Court in *Cincinnati Companies* in allowing actual notice to trigger the duty to defend relied in part on the public policy in favor of "having an insured adequately represented in the underlying litigation." *Cincinnati Cos.*, 183 Ill. 2d at 329. It argues that the policy concerns related to a duty to defend are not implicated here. As an initial matter, as noted by Ness Motley, it is not clear that the Old Republic policy includes only an indemnification obligation versus a duty to defend, but because it is an excess policy, logic tells us that it likely would apply only as to indemnification rather than defense costs. Nevertheless, this court does not find that such policy concerns regarding the duty to defend were overriding in the *Cincinnati Companies* case such that the holding would not apply to a duty to indemnify.

Old Republic's motion in limine #11 is denied.

K. *Motion in Limine #12 (Evidence of Ness Motley's habit and practice)*

In a similar vein, Old Republic argues that any evidence or argument of Ness Motley's alleged "habit and practice" of providing oral notice should also be barred. Ness Motley does not respond substantively to the motion but only states that it is improper for the court to consider this motion in limine because it is actually a motion to reconsider.

One of the grounds upon which Old Republic seeks to avoid liability for the judgment/settlement in the Underlying Action is that it did not receive notice of the claim during the proper period. Although it appears undisputed that Ness Motley did not provide written notice of the instant claim to Old Republic as provided in the policy, Ness Motley seeks to introduce evidence that it provided oral notice to Harold Weeks, who it claims was an agent of Old Republic (and thus Old Republic had actual notice of the claim).

The court assumes familiarity with its ruling on the motion for summary judgment and incorporates its discussion herein. In that ruling, the court concluded that to the extent that Ness Motley was attempting to show that it had a specific procedure in place by which it would notify its insurance carriers of any claims filed against it, the testimony of Terry Richardson or Francis Ray was admissible under FRE 406, which states that:

> Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of the eyewitness, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.

Old Republic now reargues its position, asserting that the party seeking to admit such evidence must establish that the "behavior at issue occurred with sufficient regularity making it more probable than not that it would be carried out in every instance or in most instances." *Thompson v. Boggs*, 33 F.3d 847, 854 (7th Cir. 1994). In that case, the Seventh Circuit also

stated:

> As the Advisory Committee noted in its Comment to Rule 406, habit "describes one's regular response to a repeated specific situation." "[B]efore a court may admit evidence of habit, the offering party must establish the degree of specificity and frequency of uniform response that ensures more than a mere 'tendency' to act in a given manner, but rather, conduct that is 'semi-automatic' in nature." *Simplex, Inc. v. Diversified Energy Systems, Inc.*, 847 F.2d 1290, 1293 (7th Cir.1988).
>
> "The party offering the evidence must establish the habitual nature of the alleged practice. * * * Although there are no precise standards for determining whether a behavior pattern has matured into a habit, two factors are considered controlling as a rule: adequacy of sampling and uniformity of response. * * * The factors focus on whether the behavior at issue occurred with sufficient regularity making it more probable than not that it would be carried out in every instance or in most instances. * * * The requisite regularity is tested by the ratio of reaction to situations. * * * It is essential, therefore, that the regularity of the conduct alleged to be habitual rest on an analysis of instances numerous enough to [support] an inference of systematic conduct and to establish one's regular response to a repeated specific situation."

*Id*. at 854 (final citations omitted).

However, this court also noted that one of the main concerns about habit evidence, that it would be confused with character or "other bad acts" evidence which is generally inadmissible, is not necessarily present in the instant case. *Brennan v. The Paul Revere Life Ins. Co.*, No. 00 C 0725, 2002 WL 1284385, at *3 (N.D. Ill. June 10, 2002) (stating that evidence that tended to establish "the existence of a routine practice more directly , such as by showing an entity had a general policy, procedure or rule which covered the specific scenario involved . . . . does not implicate Rule 404(b)'s concern with the misuse of evidence of specific instances of conduct.").

The *Brennan* court, in addressing a motion to preclude so-called habit evidence, further noted:

> *Simplex* did not impose a bar to "specific instance" evidence altogether; rather it limited the use of such evidence to situations in which it shows a degree of repetition sufficient to reasonably give rise to "an inference of systemic conduct" that constituted the party's regular response to a given situation. *Id.* [Simplex, 847 F.2d] at 1293, 1294 (*quoting Wilson v. Volkswagen of America, Inc.*, 561 F.2d 494, 511 (4th Cir.1977)). Indeed, just a little over a year after *Simplex* was decided, the Seventh Circuit, by a panel that included *Simplex'*s author, upheld a trial court's admission, in an insurance breach-of-contract case, of evidence of the insurer's conduct in other similar situations for the purpose of showing the company's habit and routine practice. *Rosenburg v. Lincoln American Life Insurance Co.*, 883 F.2d 1328, 1336 (7th Cir.1989).

In the motion for summary judgment, Ness Motley sought to rely on testimony of Terry Richardson and Francis Ray that they would have notified Weeks of the claim. Terry Richardson was on the Ness Motley executive committee that was responsible for professional liability matters for Ness Motley. At his deposition, when asked if he recalled any conversations with Weeks in December 2000 about the Underlying Action, Richardson testified as follows:

> A      "That would have been my practice but I can't tell you as I sit here right this moment that I specifically remember the conversation about this particular claim."
> Q      Do you recall ever speaking with Spooky Weeks about this particular claim?
> . . .
> A      I think I did, I'd be surprised if I didn't, but I really don't have any specific date, time or recollection as to having done so.
> Q      Can you recall anything that you said to Spooky about this claim?
> A      No, no.

Earlier in the deposition, Richardson was also asked about giving notice to Old Republic.

> Q      Did you have any further communications with Blair Hahn [another Ness Motley lawyer] about placing any insurance carriers on notice of this Interclaim action?
> . . .
> A      You know, usually how it would happen is one of the lawyers would call somebody on the executive committee, maybe me, maybe Joe, and say, listen, this claim's come in. And at that time I'd either tell them to contact Terre [apparently Bohman, head of accounting at Ness Motley] or Francis or Spooky and let's be sure we get this thing defended. And sometimes I'd talked to Spooky, sometimes maybe we patched in Francis or Terre right that second and turned it over. So it could have been that Blair called me before this and said, all right, get with them, write us a memo about it. And whether I or he talked to Spooky or directly to Francis at that time, I don't know. But yesterday I saw a letter where Blair did in fact write the insurance company after this memo.

Ness Motley also relies on the testimony of Francis Ray, an accounting assistant who was hired by Ness Motley in 1994. According to Ness Motley's statement of fact at ¶21, Ray reported the Underlying Action to Weeks. Contrary to the implication by Ness Motley that Ray spoke with Weeks soon after the claim was filed, Ray's testimony actually states that he could not recall when he contacted Weeks about the Underlying Action and that he would contact Weeks only if instructed by someone else.

After having reviewed the law as stated above and the cited testimony, the court has reconsidered its prior determination that Richardson and Ray's testimony (as set forth above) demonstrated a degree of repetition sufficient to constitute habit evidence under FRE 406 and

concludes that it does not. Richardson does not elaborate on his "practice" or what he did when he "usually" would give notice to Old Republic; rather those terms are used vaguely. Moreover, Richardson testified that he would tell anyone who contacted him about a potential claim to talk to one of three individuals and that "sometimes" he'd talk to Weeks and "sometimes" he would "patch in" either Terre Bohman or Francis Ray. Neither Richardson nor Ray's testimony contain any indicia of repetition or regularity such that habit could be shown. *Cf. Rosenburg v. Lincoln American Life Ins. Co.*, 883 F.2d 1328, 1336 (7th Cir. 1989)(finding sufficient evidence of routine practice under FRE 406 by insurance agents at defendant company of giving oral assurances of coverage despite its written conditions to the contrary where plaintiffs had submitted to defendant statements of 29 persons to that effect); *Brennan*, No. 00 C 0725, 2002 WL 1284385, at *4 ("plaintiff has direct evidence consisting of the testimony of Dr. William Fiest, a former Vice President and Medical Director of Paul Revere, that that company had a policy of targeting for termination certain types of high-level disability insurance claims (including those of the type made by Brennan) and then marshaling evidence to support the termination, rather than dealing with the claims fairly.").

However, this is not to say that Ness Motley could not make some offer of proof at trial outside the jury's presence demonstrating that Richardson or Ray could provide sufficient foundation such that their testimony would constitute admissible habit evidence under FRE 406. Old Republic's motion in limine #12 is thus denied pending further proceedings at trial.

      L.        *Motion in Limine #13 (Evidence or argument as to prejudice)*

Old Republic seeks to bar defendants from presenting any evidence or argument regarding whether Old Republic was prejudiced by Ness Motley's late notice of the underlying claim because in a claims-made policy, the issue of prejudice is irrelevant and therefore inadmissible. *Executive Risk Indemnity, Inc. v. Chartered Benefit Servs. Inc.*, No. 03 C 3224, 2005 WL 1838433, at *10 (N.D. Ill. July 29, 2005). Ness Motley merely responds again that it is "unclear" what evidence Old Republic seeks to exclude by this motion and asserts that if Ness Motley is foreclosed from arguing that Old Republic suffered no prejudice, then Old Republic cannot argue that it was prejudiced.

The court agrees that to the extent that Ness Motley attempts to introduce evidence for the sole purpose of showing that Old Republic was not prejudiced by any delay, it is irrelevant to this claims-made policy and is inadmissible. To the extent Ness Motley attempts to introduce evidence for any other purpose the court will address the issue at trial. Old Republic's motion in limine #13 is granted as stated herein.

      M.        *Motion in Limine #14 (Legal contention that Ness Motley was required to have punitive damages coverage under South Carolina Law)*

Old Republic seeks to bar Ness Motley from asserting that Ness Motley was required to have punitive damages coverage under South Carolina law because the defendants have failed to provide any competent evidence that South Carolina law so requires. Ness Motley asserts that it has such evidence. This is an issue properly addressed at trial. If nothing in South Carolina law

so requires, then should Ness Motley elicit such testimony, Old Republic can challenge it through cross-examination or rebuttal testimony. Old Republic's motion in limine #14 is denied pending renewal at trial.

   M.  *Motion in Limine #15 (Form Endorsement/Defendant's Exhibit 48)*

 Old Republic seeks to bar the defendants from presenting any evidence or argument relating to the defendants' Exhibit 48, a form amendment that Old Republic asserts is not part of the policy at issue. Therefore, Old Republic argues, because it is not part of the policy, it cannot be relevant to this case and should be deemed inadmissible under FRE 402, and if it is relevant, it should be excluded under FRE 403 because any probative value is substantially outweighed by the risk of unfair prejudice, confusion of the issues and misleading the jury.
 This is an issue properly addressed at trial. If Ness Motley seeks to elicit testimony or admit evidence regarding an endorsement that Old Republic contends was not part of the policy at issue, Old Republic can seek to impeach Ness Motley's witnesses or offer their own rebuttal evidence on the topic. Old Republic has failed to offer any basis for its assertion that the probative value is substantially outweighed by the risk of unfair prejudice or jury confusion. Old Republic's motion in limine #15 is denied.

   N.  *Motion in Limine #16 (Evidence that Old Republic is hiding evidence of actual notice)*

 Old Republic seeks to bar any evidence or argument that it should be inferred from Old Republic's alleged evasive conduct during the Rule 30(b)(6) depositions that Old Republic is hiding evidence that it had timely notice of the underlying claim. According to Old Republic, the defendants have previously argued that Old Republic's 30(b)(6) witness had been evasive about the steps it took to determine whether it had received any notification of the underlying claim prior to April 15, 2002. Old Republic contends it should be excluded because it is not relevant to the issue of whether the defendants have met their burden of proving that they satisfied all conditions precedent to coverage, including the provision of timely notice. *Mijes v. Primerica Life Ins. Co.*, 740 N.E.2d 1160, 1163-64 (Ill. App. Ct. 2000). It then asserts that even if such evidence is relevant, it should be excluded under FRE 403 because any probative value is not substantially outweighed by the risk that it may unfairly prejudice Old Republic by misleading the jury into believing that it is Old Republic's burden to prove lack of timely notice.
 In its ruling on the motion for summary judgment, this court indicated that it was rejecting Ness Motley's attempt to show that Old Republic had actual notice based on the "evasions" during the 30(b)(6) testimony. This conclusion, however, is not binding on the jury. The court's statement related only to the summary judgment motion and was not a conclusion of law. Old Republic has not demonstrated that the alleged evasive conduct is inadmissible. Accordingly, its motion in limine # 16 is denied.

   O.  *Motion in Limine #17 (Erroneous Privilege Log)*

 According to Old Republic, its prior litigation counsel produced a privilege log that

erroneously indicated that on August 10, 2001, Old Republic had handwritten notes in its possession regarding the Underlying Action. However, Old Republic states that the notes, which were subsequently produced, only *referenced* an August 10, 2001, correspondence between Twin City and Ness Motley and were actually created on October 23, 2002, after the First Policy period ended. Old Republic seeks to exclude the privilege log on the following grounds: (1) it is inadmissible pursuant to FRE 1002 because the defendants seek to impermissibly prove the content of the handwritten notes through the privilege log; (2) it is irrelevant under FRE 402 because the erroneous privilege log is not evidence but is merely a tool to facilitate discovery; and (3) any probative value is substantially outweighed by the dangers of unfair prejudice, jury confusion and waste of time. Old Republic's previous counsel submitted an affidavit attesting to the fact that a mistake had been made, and as soon as he realized the mistake, he caused Old Republic to issue a revised privilege log and notify all parties that Old Republic had previously withdrawn its claim of privilege as to that document. He also allowed opposing counsel to view the original, which they did, for less than five minutes.

Ness Motley argues that a representative of Old Republic testified at his deposition that the log was correct and that that portion of the deponent's testimony was not corrected. It then states that Old Republic's arguments "assumes the notes are what Old Republic claims they are" and that "[t]he log points in a different direction, namely that some other writing exists."

This court agrees that the privilege log itself is not evidence; rather, the document named in the privilege log is the evidence. Because the court concludes that any probative value is substantially outweighed by the probability of jury confusion, the privilege log is inadmissible. The parties will be held to proving their cases based on the actual evidence, not on misstatements made and corrected by their lawyers. Further, as noted by Old Republic, if Ness Motley is permitted to attempt to introduce the privilege log, a "trial within a trial" will result as Old Republic will be required to call its previous counsel to testify as to the circumstances surrounding the mistake, among other things, and the court's time and resources will be wasted.

Old Republic's motion in limine #17 is granted.

> P. *Motion in Limine #18 (Evidence or argument that Old Republic has misrepresented its principal place of business)*

Earlier in the case, Ness Motley argued that Old Republic had misrepresented its principal place of business as Illinois instead of Pennsylvania. The court rejected this contention, which was made in Ness Motley's motion to reconsider the choice of law issue. The court found that Old Republic had not "misrepresented" its principal place of business for purposes of this case and noted that Ness Motley had admitted the paragraph in which Old Republic alleged that its principal place of business was Illinois.

However, the court does not find that the issue is inadmissible for any purpose. To the extent that Ness Motley seeks to introduce evidence that Old Republic has represented its principal place of business as being in places other than Illinois, the court will entertain objections in the context of trial. Old Republic's motion in limine #18 is denied pending renewal at trial.

II. The Richardson Patrick Defendants (Terry E. Richardson, Jr., Michael J. Brickman and

H. Blair Hahn)

Old Republic and the Richardson Patrick defendants filed a joint motion to dismiss with prejudice (a) the claims Old Republic has against the Richardson Patrick defendants as well as (b) the counterclaim asserted by two of the Richardson Patrick against Old Republic, which motion this court granted. Nevertheless, Ness Motley adopted the Richardson Patrick motions in limine. Accordingly, although the Richardson Patrick defendants are no longer in the case, the court will rule on this motion in limine.

*Motion in Limine to preclude Old Republic from examination concerning the substance of the Interclaim action*

The Richardson Patrick defendants seek to prevent Old Republic from eliciting testimony from them concerning the substance of the Underlying Action, as well as the trial and the jury verdict. Specifically, in its First Amended Complaint ("FAC"), Old Republic alleges that it is not liable for the claim in the Underlying Action based on the "intentional act" and "fraudulent conduct" exclusions. The Richardson Patrick defendants assert that because "Old Republic contends that these exclusions negate coverage based on the jury's verdict in the Interclaim action," and the jury's verdict could only be premised upon the testimony and other evidence that was presented to the jury, that is all the Old Republic should be permitted to reference.

This court agrees that the Richardson Patrick defendants' request is based on a purposely stilted reading of the allegations in the FAC. Old Republic's allegations as to the exclusions are based on provisions in the policy. Thus, it is the policy provisions and not the allegations in the complaint that will determine whether the exclusions apply. The exclusions refer to "claims arising out of" specific conduct that is then described. A "claim" is defined as "a notice received by the insured from a person or entity advising that it is the intention of that person or entity to hold the insured liable for damages for an act, error, or omission covered under this policy." Nothing in the definition of claim ties it to an underlying jury verdict. In other words, a "claim" does not take on meaning only when a jury reaches a verdict in the underlying action.

Moreover, as noted by Old Republic, the evidence presented and testimony elicited in the Underlying Action is likely quite different from that to be elicited by Old Republic for purposes of meeting its burden of showing that one or more of the exclusions apply. The court can see no reason why Old Republic must be bound by the evidence as introduced in the Underlying Action.

That being said, the court agrees with the Richardson Patrick defendants that it is quite possible that given the allegations in the Underlying Action (that Ness Motley breached its fiduciary duty, misappropriated confidential information, and breached its contract with its client Interclaim), the probative value of certain testimony may be substantially outweighed by the unfair prejudice or jury confusion. However, a determination on this issue is better saved for trial when the court can consider the context in which it is being offered. Accordingly, the Richardson Patrick's motion in limine is denied pending renewal at trial.

III. <u>Ness Motley Defendants</u> (Ness Motley, Loadholt, Richardson & Poole, P.A.; Motley Rice, L.L.C.; MRRM, P.A.)

Page 14

Ness Motley seeks to exclude the expert testimony of George Collins as to any issues related to its allegation that Ness Motley and Twin City improperly handled the Underlying Action and improperly failed to settle the Underlying Action on the ground that Old Republic has dismissed with prejudice the counts relating to this testimony. According to Ness Motley, the only other issue on which Mr. Collins testified is whether there existed a conflict of interest between two of Ness Motley's clients. Old Republic agrees that it intends to offer Mr. Collins' testimony only on the conflict of interest issue described in Old Republic's motion in limine #4 above. Accordingly, to the extent that Ness Motley seeks to exclude Mr. Collins' testimony on any issue other than the conflict of interest issue, it is granted.

As to the conflict if interest issue, this is based on an exclusion under the policy as relied upon by Old Republic. Mr. Collins opined that a conflict existed in the Underlying Action between the class and Interclaim, and that Ness Motley had favored the class over Interclaim. Based on this opinion, Old Republic invoked the policy's exclusion for claims that arise out of a conflict of interest (i.e., Old Republic seeks to demonstrate that because the claim for coverage in the instant case arose out of a conflict of interest faced by Ness Motley between its two clients in the Underlying Action, Interclaim and the class, Old Republic is not liable to cover the judgment/settlement).

Ness Motley, however, (after accusing Mr. Collins of failing to read all of the trial transcript in the Underlying Action), asserts that Interclaim argued in the Underlying Action that there was no conflict of interest. Ness Motley points to the opening statement and closing argument in the Underlying Action in which (apparently) Interclaim's lawyer states that Ness Motley only claimed such a conflict existed in order to allow Ness Motley to withdraw from representing Interclaim and enable Ness Motley to enter into a settlement agreement favorable to it. The jury in the Underlying Action found for Interclaim and awarded $36 million in compensatory and punitive damages. The court, however, is not clear why this is a basis for excluding the testimony of Mr. Collins. Ness Motley presumably can introduce evidence of the argument made by Interclaim in the Underlying Action in order to discredit Mr. Collins' testimony.

Ness Motley also argues that Mr. Collins testified that the proposed settlement was not in the best interest of either Interclaim or the class but questions "How there was a conflict of interest between two clients, *both* of whom were being mistreated, Mr. Collins does not explain." Resp. at 4 (emphasis in original). Thus, Ness Motley concludes that Mr. Collins' claim of a conflict of interest is legally and factually unsupportable and is therefore inadmissible. Again, the court is not certain as to why Mr. Collins cannot opine that an actual conflict existed despite the fact that Ness Motley apparently treated both clients poorly or unethically. If Ness Motley seeks to undermine the weight that the jury attributes to Mr. Collins' testimony on this subject, it may do so through vigorous cross-examination or rebuttal testimony. However, Ness Motley has failed to set forth a basis under the Federal Rules of Evidence as to why the testimony is inadmissible. Accordingly, Ness Motley's motion in limine is denied.

**ENTER:**
**DATE:** December 21, 2006

*(signature: Blanche M. Manning)*
**Blanche M. Manning**
**United States District Judge**